# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

COREY LEE DOVE,

    Plaintiff,

    v.

CLEVELAND FRIDAY,
C.O. ELIJAH GARNETT and
LT. LEE,

    Defendants.

Civil Action No.: TDC-21-2372

## MEMORANDUM OPINION

Plaintiff Corey Lee Dove, a state inmate currently confined at Roxbury Correctional Institution in Hagerstown, Maryland, has filed a civil action pursuant to 42 U.S.C. § 1983 in which he alleges that his constitutional rights were violated when he was improperly assigned to administrative segregation and transferred out of the Jessup Correctional Institution ("JCI") in Jessup, Maryland. Defendants, former JCI Warden Cleveland Friday, Correctional Officer ("CO") Elijah Garnett, and Lt. Shavonne Lee, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Dove opposes the motion. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED.

## BACKGROUND

At all times relevant to the Complaint, Plaintiff Corey Lee Dove was incarcerated at JCI. On May 4, 2020, Dove filed a civil action in the United States District Court for the District of Maryland asserting that the protective measures taken to address the COVID-19 pandemic were

inadequate. *See Dove v. Gang* ("*Dove I*"), No. DKC-20-1145 (D. Md. 2020). After the court (Chasanow, J.) directed the Maryland Division of Correction to respond to the filing, it issued a memorandum opinion on July 24, 2020 dismissing the complaint because Dove had failed to exhaust administrative remedies. *Dove I*, No. DKC-20-1145, 2020 WL 42692269, at *5 (D. Md. July 24, 2020). In its opinion, the court relied in part on a declaration submitted by CO Garnett, dated June 22, 2020, in which CO Garnett stated that Dove was seen on one occasion wearing his facemask around his neck. *Id.* at *1. According to Dove, he also filed multiple Administrative Remedy Procedure complaints ("ARPs") while incarcerated at JCI.

On November 8, 2020, CO Garnett issued a Notice of Inmate Rule Violation ("the Notice") against Dove in which he asserted that Dove had made a verbal threat against him. Dove denies making such a statement and states that while incarcerated over the past ten years, he had never been accused of a violent act or threat. According to the Notice, after CO Garnett observed that Dove was in the C-wing area and was thus out of bounds, he gave Dove several direct orders to move into his assigned housing wing, "B tier," but Dove refused, used profanity, and threatened to kill him. Notice at 1, Mot. Dismiss Ex. C, ECF No. 12-5. Dove refused to identify himself when asked, but he "was later identified by the tier roster." *Id.* Dove was charged with violating Rules 104 (making threats), 312 (interfering with a search), 316 (disobeying an order), and 402 (being in an unauthorized area). Dove entered a guilty plea at the disciplinary hearing but asserts that he did so because he was told that correctional officers are always believed over inmates. As a sanction, Dove was placed in disciplinary segregation until December 12, 2020. After that date, however, he remained in segregation without explanation.

On December 22, 2020, Dove filed ARP No. JCI-0006-21, in which he complained that he remained in segregation even after his disciplinary segregation sentence expired. Lt. Lee

investigated his claim and concluded that upon the expiration of his disciplinary segregation, Dove should have been redesignated to administrative segregation "based on a threat infraction written by Officer Elijah Garnett on 11/08/2020," but that the "proper paperwork" was not prepared, and Dove was not provided with notice of the change. ARP No. JCI-0006-21 at 0048-49, Mot. Dismiss Ex. C, ECF No. 12-5. As part of her report on the ARP, Lt. Lee included the November 8, 2020 infraction, which was the same Notice of Rule Violation underlying the disciplinary proceeding. She also included a statement by CO Garnett, dated January 28, 2021 and thus prepared over a month after the initiation of administrative segregation, in which he requested that Dove be kept out of the general population because he had made a threat on CO Garnett's life. In February 2021, Warden Friday found Dove's ARP to be meritorious in part because although Dove was properly assigned to administrative segregation, he had not been notified of that designation.

Meanwhile, on January 8, 2021, Dove filed an ARP in which he complained that the Notice issued by CO Garnett and the unjustified assignment to administrative segregation were in retaliation for his filing of ARPs and his filing of *Dove I*, and that other inmates have been transferred out of JCI based on false allegations. According to Dove, at some point after that, while he was on administrative segregation, Sgt. Najoku called CO Garnett in an effort to facilitate Dove's release from segregation, and Dove and two other correctional officers who were present could hear the conversation on a speaker phone. When Sgt. Najoku asked CO Garnett why he had not yet signed off to allow Dove to return to the general population, Garnett stated that he had no issues with Dove, but that he would have to check with Warden Friday before signing off, on the grounds that Warden Friday had told him to not to let Dove out of segregation because he wanted to get Dove transferred to another facility. On February 2, 2021, Dove filed ARP No. JCI-0315-21 in which he reported this incident and alleged that he was being subjected to retaliation in the

form of the administrative segregation and potential transfer to another facility. Both of Dove's ARPs alleging retaliation were denied, as were his appeals of those denials to the Commissioner of Correction and to the Inmate Grievance Office.

Construed liberally, the Complaint alleges that the Notice and subsequent discipline, the unjustified administrative segregation, and the transfer to another prison constituted cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution, and unlawful retaliation for filing grievances, in violation of the First Amendment. Dove further alleges that the retaliation included a sexual assault by another correctional officer, CO Kazeem, while he was in administrative segregation. He also references the recent history of corruption among correctional officers at JCI, including the smuggling of contraband into the prison. As relief, Dove seeks monetary damages and the termination of Warden Friday, CO Garnett, and Lt. Lee. Dove also requests an investigation into similar false disciplinary charges by CO Garnett against other inmates that were used as reasons to place them on segregation and then to transfer them out of JCI.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that (1) any claims asserted against Defendants in their official capacities are barred by the Eleventh Amendment to the Constitution; (2) as to Warden Friday, the Complaint fails to allege his personal participation in the alleged constitutional violations; (3) the Complaint fails to allege sufficient facts to state plausible claims for violations of the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment, or the First Amendment; and (4) they are entitled to qualified immunity. Because the Court does

4

not construe the Complaint as alleging claims against Defendants in their official capacities, the Court need not and will not address the Eleventh Amendment argument.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have attached multiple exhibits to their Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any documents attached to that pleading. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Court may, however, take judicial notice of the proceedings in another case and will do so as to the relevant filings in *Dove I. See* Fed. R. Evid. 201(b)(2); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "the most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (citation omitted).

Federal Rule of Civil Procedure 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not

excluded. Fed. R. Civ. P. 12(d).  Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion.  To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). In opposing the Motion, Dove has not asserted a need for discovery in order to respond to the Motion. The Court therefore will construe the Motion as a motion for summary judgment as to those arguments requiring consideration of the exhibits attached to the Motion.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit

under the governing law." *Anderson,* 477 U.S. at 248.  A dispute of material fact is "genuine"

only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a

verdict for that party. *Id.* at 248-49.

## II.    Eighth Amendment

Dove asserts that his placement in administrative segregation following his authorized

period of disciplinary segregation, and his subsequent transfer, constituted cruel and unusual

punishment in violation of the Eighth Amendment.  The Eighth Amendment's prohibition on

"cruel and unusual punishments," U.S. Const. amend. VIII,  "protects inmates from inhumane

treatment and conditions while imprisoned." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir.

1996).  The Eighth Amendment is violated when an inmate is exposed to conditions of confinement

that "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman,*

452 U.S. 337, 347 (1981).

To succeed on an Eighth Amendment claim, a plaintiff must demonstrate that the injury or

deprivation inflicted was objectively serious enough to constitute a violation, and that the prison

official subjectively "acted with a sufficiently culpable state of mind." *Williams,* 77 F.3d at 761.

"These requirements spring from the text of the amendment itself; absent intentionality, a

condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such

punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve,* 535 F.3d 225, 238 (4th Cir. 2008)

(citing *Wilson v. Seiter,* 501 U.S. 294, 298-300 (1991)).

In holding that the placement of an inmate who has not violated prison rules into protective

segregation does not violate the Eighth Amendment, the United States Court of Appeals for the

Fourth Circuit stated that "segregated confinement is not per se unconstitutional." *Allgood v.

Morris,* 724 F.2d 1098, 1101 (4th Cir. 1984).  Since *Allgood,* the Fourth Circuit has held that

7

extreme forms of segregation can constitute cruel and unusual punishment, such as prolonged solitary confinement under circumstances that create "a substantial risk of serious psychological and emotional harm." *Porter v. Clarke*, 923 F.3d 348, 364 (4th Cir. 2019). In *Porter*, the conditions creating this risk included the placement of Virginia's death row inmates, for periods of years, in solitary cells with solid doors for 23 to 24 hours per day, with no access to congregate programming and no access to exercise equipment. *Id.* at 357, 358-59. Here, Dove has not provided allegations supporting the conclusion that the duration and specific conditions of his administrative segregation created the kind of risk of psychological or emotional harm that would support the conclusion that it violated the Eighth Amendment.

As for Dove's transfer to another facility, placement in a particular prison, even one at a higher security classification, does not by itself violate the Eighth Amendment. *Paoli v. Lally*, 636 F. Supp. 1252, 1267-68 (D. Md. 1986) ("Generally, transfers from one prison to another do not violate the Eighth Amendment.") (collecting cases). The Eighth Amendment claim therefore fails.

## III.   Due Process

Although Defendants argue that the Complaint fails to allege a plausible due process claim, the Court does not read the Complaint as asserting such a claim. In his memorandum in opposition to the Motion, Dove confirms that he is not challenging the imposition of disciplinary segregation based on his guilty plea to the Notice, but he appears to claim for the first time that his assignment to administrative segregation violated his due process rights. The Court need not consider this claim because a plaintiff may not amend the complaint through such briefing. *See Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the

complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Laboratories, Inc. v. Akzo, N. V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

Nevertheless, the Court finds that even if it were to consider a due process claim at this point, it would fail. Absent imposition of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," designation of administrative segregation alone does not implicate a liberty interest for which due process is required. *Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995) (finding that a 30-day assignment to disciplinary segregation did not implicate a liberty interest). Where Dove has alleged no facts about the specific conditions in administrative confinement that could demonstrate such an atypical and significant hardship, Dove has failed to state a viable due process claim.

## IV.  Retaliation

Dove's primary claim is that the Notice, the period of administrative segregation, and his transfer constituted unlawful retaliation against him for exercising his First Amendment rights by filing ARPs and by filing *Dove I* to challenge JCI's response to the COVID-19 pandemic. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). The adverse action must be conduct that "tends to chill" First Amendment activity in that it "would likely deter a person of ordinary firmness" from the exercise of First

Amendment rights. *Id.* at 500. The conduct need not actually cause the First Amendment activity to cease. *Id.*

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections," including First Amendment rights. *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 545 (4th Cir. 2017). However, "[i]n the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994)).

Here, there is no dispute that Dove engaged in First Amendment activity, specifically, the filing of *Dove I* and ARPs. *Dove I* was filed in May 2020 and was dismissed without prejudice on July 24, 2020 for failure to exhaust administrative remedies. *Dove I*, 2020 WL 42692269, at *5. As for the adverse action, the filing of the Notice and the period of administrative segregation following Dove's service of disciplinary segregation sentence arising from the Notice constituted the type of activity that could have the tendency to chill First Amendment activity.

Dove's claim, however, fails on the third requirement, a causal link between his filing of grievances and the adverse actions. Where Dove pleaded guilty to the rules violations asserted in the Notice, even with his present explanation that he did so because he was advised that his word

would not be believed over that of a correctional officer, the Court will not find a viable First Amendment retaliation claim based on the filing of the Notice.  As for the imposition of an additional period of administrative segregation without notice or explanation, Dove has provided facts that raise legitimate questions about the imposition of administrative segregation.  For example, he alleges, and the ARP documents submitted by Defendants confirm, that CO Garnett only wrote a statement confirming that Dove had made a threat against him in support of Dove's administrative segregation on January 28, 2021, long after his period of administrative segregation began.  Dove further asserts that, in partial contradiction of that statement, he heard CO Garnett state in a phone conversation with Sgt. Najoku during the same time frame that he had no issues with Dove, that he needed to check with the Warden before signing off on Dove's release from administrative segregation, and that Warden Friday wanted Dove transferred to another facility.

Dove, however, has not alleged sufficient facts to support the inference that the imposition of administrative segregation, or any subsequent transfer, was caused by or motivated by his filing of *Dove I* and ARPs.  Although Dove claims that Warden Friday directed the retaliation against him for engaging in First Amendment activity, he has alleged no facts that show that Warden Friday was aware of any such activity pre-dating the Notice.  *Dove I* was filed against Warden Allen Gang, not Warden Friday, and a review of the filings in that case reveal that Warden Gang was the warden of JCI at the time that Dove filed an ARP about the COVID-19 pandemic in April 2020, at the time he filed *Dove I* on May 4, 2020, and at the time that the final brief was filed in *Dove I* on June 22, 2020.  None of the filings in *Dove I* reference Warden Friday or confirm whether or not he even worked at JCI during the pendency of that case.  As for the unspecified ARPs that Dove claims to be additional reasons for the alleged retaliation, Dove has not described any specific ARPs he filed before the Notice was issued, has not provided dates for those ARPs,

and therefore has not demonstrated that any were filed after Warden Friday assumed his position sometime after July 2020. The Complaint therefore does not provide facts supporting the conclusion that Warden Friday was even aware of the First Amendment activity. Likewise, there are no allegations showing that Lt. Lee had any knowledge of *Dove I* or any of the unspecified ARPs constituting the alleged First Amendment activity.

As for CO Garnett, the filings in *Dove I* include a June 22, 2020 declaration by CO Garnett in which he described certain COVID-19 preventative measures and stated that he had seen Dove fail to wear a facemask in violation of those protocols, thus demonstrating that CO Garnett was at least aware of *Dove I*. Garnett Decl. ¶ 8, *Dove I*, No. DKC-20-1145 (ECF No. 14-6). However, that filing occurred over four months before the Notice was issued, and neither the declaration nor any other part of the *Dove I* record provides a basis to conclude that Dove's complaints about JCI's COVID-19 pandemic response were critical of the actions of CO Garnett, Warden Friday, or Lt. Lee. Dove has also failed to allege specific facts demonstrating that CO Garnett was aware of any ARPs filed by Dove before the Notice was issued, or that any such ARPs were critical of the actions of CO Garnett or any of the other Defendants. Instead, the record establishes that as of the time of Dove's assignment to administrative segregation, CO Garnett's most recent interaction with Dove occurred when Dove made a threat against CO Garnett in November 2020, an incident to which he pleaded guilty. Based on these facts, and particularly where, as discussed above, Dove's theory is that Warden Friday was directing the allegedly retaliatory activity, Dove has not provided a sufficient basis to support the inference that the administrative segregation was imposed as retaliation for First Amendment activity. Even if Dove has asserted facts suggesting that the administrative segregation was problematic, and perhaps was a reaction to the November 2020 threat against CO Garnett to which Dove pleaded guilty, he has not stated a viable claim that it

12

constituted retaliation for Dove's filing of *Dove I* or the unspecified ARPs, as required to state a First Amendment claim.

Finally, although Dove states in his Complaint that the retaliation against him included an incident when CO Kazeem grabbed his genitals while he was in administrative segregation. Dove, however, did not name CO Kazeem as a defendant, CO Kazeem has not yet been served, and, as discussed above, Dove cannot amend the Complaint through his brief. The Court notes that even if the Court were to consider this allegation against CO Kazeem, the claim would fail because the Complaint likewise provides no facts demonstrating that CO Kazeem had any knowledge of Dove's First Amendment activity. Any claim relating to the alleged assault itself would need to be filed in separate case. The Motion to Dismiss will therefore be GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED. A separate Order shall issue.

Date: March 9, 2023

THEODORE D. CHUANG
United States District Judge